PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 15-1942

UNITED STATES OF AMERICA

v.

TERRELL STEVENSON,

Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-12-cr-00145-005)
District Judge: Honorable Robert D. Mariani

Submitted May 20, 2016

Before:  SMITH, HARDIMAN, and SHWARTZ,
*Circuit Judges*.

(Filed:  August 9, 2016)

Michelle L. Olshefski
Office of United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503
        *Attorney for Appellee*

Gino A. Bartolai, Jr.
238 William Street
Pittston, PA 18640
        *Attorney for Appellant*

————————

OPINION OF THE COURT

————————

HARDIMAN, *Circuit Judge*.

This appeal arises out of a federal investigation into a heroin distribution ring that operated out of a Scranton hip-hop radio station and recording studio called Hood Promo. Eight individuals associated with the hip-hop heroin hub were indicted on various federal drug and weapons charges. All of them pleaded guilty except for Appellant Terrell Stevenson.

Before Stevenson was brought to trial, the Defendants filed dozens of pretrial motions. Although most of the delay occasioned by the various motions and plea negotiations was "excludable time" under federal law, the Government conceded that Stevenson's rights under the Speedy Trial Act were nevertheless violated. Accordingly, Stevenson filed a motion to dismiss his indictment, which the District Court granted without prejudice to the Government's right to indict him anew on the same charges. Stevenson's principal

claim in this appeal is that the District Court abused its discretion when it granted his motion to dismiss *without* prejudice. He also argues that the indictment failed to allege all the elements of the crime of fraud in relation to identification documents. In addition, he appeals the District Court's denial of his motions to suppress, the propriety of the District Court's conduct at trial, and the reasonableness of his 360-month sentence.

I

A

In December 2011, at the request of the Lackawanna County Drug Task Force, federal agents became involved in the search for an elusive heroin dealer named Siquana Wallace. Using a variety of investigatory methods, including confidential sources, physical surveillance, undercover purchases, body wires, and a pole camera, the agents concluded that Hood Promo was the Scranton hub of a heroin ring. The owner of Hood Promo—Lamar Thomas a.k.a. "Hood"—and another man—Greg Bush a.k.a. "G"—were suspected of transporting heroin from New York to Scranton and then distributing the drugs out of Hood Promo. One member of the drug trafficking organization was a 5'6" black male in his late twenties known as "Inf" or "Infinite," who drove a gray BMW. In addition to concluding that "Inf" dealt heroin in nearby Wilkes-Barre, the agents learned that "Inf" was wanted in New York for drug-related crimes and that his real name was Terrell Stevenson.

While conducting surveillance outside Hood Promo on February 15, 2012, DEA Special Agent William Davis observed a black male arrive at the studio in a gray 2004

3

BMW, enter and exit the building, and begin driving in the direction of Wilkes-Barre. His "investigative instinct" roused, Davis ran the vehicle's registration and arranged for the local police to conduct a traffic stop after he learned the car was registered to Lamar Thomas. App. 962. The driver of the car—who agents later learned was Appellant Stevenson—produced a Georgia driver's license bearing the name Nathan Ernest Truitt. The police accordingly sent "Truitt" on his way.

Stevenson did not escape the DEA's grasp for long. Court-authorized wiretaps of Thomas's and Bush's phones and further investigation into Hood Promo led the authorities to home in on several suspects, including Stevenson. On May 22, 2012, Special Agent Davis submitted an affidavit in support of a search warrant application for five properties, one of which was Stevenson's residence. A magistrate judge issued the warrant and the DEA executed it, arresting Stevenson and his roommate Chris Taylor, and seizing hundreds of glassine baggies of heroin, a loaded handgun (found in Stevenson's room and later confirmed to be stolen), fraudulent driver's licenses and credit cards in the names of Gregory Matthew Henderson and Nathan Ernest Truitt (found on Stevenson's person), and various other inculpatory items and documents. In all, eight individuals were arrested around the same time in connection with the Hood Promo conspiracy.

B

The number of Defendants and the complexity of the case resulted in a lengthy and sometimes hectic pretrial process. On June 5, 2012, a federal grand jury returned an indictment against seven defendants, including Stevenson, who was charged with conspiracy to distribute and to possess

4

with intent to distribute 100 grams or more of heroin within 1,000 feet of a school in violation of 21 U.S.C. §§ 846 and 841; unlawful use of a communication facility (*i.e.*, using a cellphone in furtherance of his illegal activity) in violation of 21 U.S.C. § 843(b); and unlawful possession of a stolen firearm in violation of 18 U.S.C. § 922(j). Because Stevenson refused to enter a plea at his June 13, 2012 arraignment, the District Court entered a plea of not guilty on his behalf and scheduled trial for August 20, 2012, setting July 16 as the deadline for filing pretrial motions. When that date arrived, Stevenson filed his first of eight unopposed motions to extend the pretrial motions deadline, all of which were granted by the District Court. The cycle repeated when a federal grand jury returned a superseding indictment on October 16, 2012, which was identical to the original indictment, except that it added an eighth defendant. The Court once again entered a plea of not guilty for Stevenson after he refused to enter a plea.

The next year involved a steady stream of pretrial motions and extension requests from the Defendants. Among them was a motion by Stevenson to suppress evidence seized from his residence for lack of probable cause to support the search warrant, which the District Court denied on October 25, 2013. From that day until February 7, 2014, the 70-day Speedy Trial Act clock was running (except for one excludable day). *See* 18 U.S.C. § 3161(c)(1), (h). Seizing on this inappropriate delay, Stevenson filed a motion to dismiss on June 16, 2014. After the Government conceded that at least 103 non-excludable days had passed since Stevenson's arraignment, the District Court agreed with Stevenson that the Speedy Trial Act required dismissal of the first superseding

indictment.[1] Unfortunately for Stevenson, the Court did not agree with his request to dismiss the indictment with prejudice.

Guided by three factors the Speedy Trial Act requires trial courts to consider, *see* 18 U.S.C. § 3162(a)(2), the District Court held that dismissal without prejudice was appropriate. The Court concluded that the first factor—the seriousness of the offense—weighed against dismissal with prejudice because courts have consistently agreed that drug trafficking and firearm offenses are serious. It also decided that the second factor—the facts and circumstances that led to the Speedy Trial Act violation—militated against dismissal with prejudice. In the District Court's view, the non-excludable delay was relatively harmless "in light of the repeated delays and the chaotic nature" of the case—much of

---

[1] During the pendency of Stevenson's motion, the Government obtained a second superseding indictment against Stevenson which reasserted the same charges as the first one and added counts for possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm by a fugitive from justice in violation of 18 U.S.C. § 922(g)(2). Applying out-of-circuit precedent holding that the speedy trial period does not reset when stale charges are strategically reasserted in a superseding indictment, the Court ruled that the Government's second superseding indictment did not remedy the violation with respect to the three original counts of the first superseding indictment.

which was attributable to the acts of the eight Defendants. App. 43. Finally, the Court viewed the third factor—the impact of a new prosecution on the administration of justice—as supporting dismissal without prejudice because Stevenson did not show that he was prejudiced by the Government's violation of the statute. For these reasons, the Court dismissed the charges against Stevenson contained in the first superseding indictment without prejudice on September 4, 2014.

The Government obtained a third superseding indictment against Stevenson on September 9, 2014. The charges in that indictment were the same as the one that preceded it, except for a new count of fraud in relation to identification documents in violation of 18 U.S.C. § 1028(a)(7). Stevenson promptly moved to dismiss this new charge on the basis that the indictment failed to allege the interstate-commerce element of the offense, but the District Court found the indictment sufficient and denied the motion. In anticipation of defending against this charge, Stevenson moved to suppress evidence relating to the stop of his vehicle and his production of false identification. The Court denied the motion prior to trial, finding that Stevenson had provided no evidence to support his contention of an unlawful stop, but allowed Stevenson to re-argue the motion, ultimately concluding that the stop was supported by reasonable suspicion that "Inf" was the driver and that criminal activity was afoot.

After a one-week trial, the jury found Stevenson guilty on all counts except one: possession of a firearm in furtherance of drug trafficking. The Court sentenced Stevenson to 360 months' imprisonment on the conspiracy-to-distribute and possession-with-intent-to-distribute counts,

7

96 months on the communications-facility count, 120 months on each of the firearms-related counts, and 240 months on the fraud count—all to run concurrently. Stevenson appealed.[2]

## II

Although Stevenson raises several challenges to his conviction and sentence, his principal argument is that the District Court abused its discretion when it dismissed the first superseding indictment without prejudice. He also takes issue with the adequacy of the facts alleged in the indictment to support the identification-document fraud charge, the District Court's refusal to suppress evidence gathered from the stop of his vehicle and the search of his residence, the propriety of the District Court's conduct during trial, and the reasonableness of his sentence. We address each argument in turn.

## A

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. To vindicate this right, Congress established a bright-line rule in the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, which requires that a trial start "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C.

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

8

§ 3161(c)(1). This deadline is not absolute, however, because certain periods of delay "shall be excluded . . . in computing the time within which the trial . . . must commence." 18 U.S.C. § 3161(h). The most common form of "excludable" delay results from the filing and disposition of pretrial motions. 18 U.S.C. § 3161(h)(1)(D).

If a defendant is not brought to trial within the requisite time, the Speedy Trial Act mandates dismissal of the indictment upon the defendant's motion. 18 U.S.C. § 3162(a)(2). As for whether the dismissal should be with or without prejudice, the Act requires the court to "consider, among others, each of the following factors: [1] the seriousness of the offense; [2] the facts and circumstances of the case which led to the dismissal; and [3] the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). The Supreme Court has explained that the "district court must carefully consider th[ese] factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review." *United States v. Taylor*, 487 U.S. 326, 336 (1988).[3]

---

[3] We review the District Court's dismissal without prejudice for abuse of discretion and its underlying factual findings for clear error. *Taylor*, 487 U.S. at 336–37; *see also United States v. Saltzman*, 984 F.2d 1087, 1092 (10th Cir. 1993) ("Because 'Congress has declared that a decision will be governed by consideration of particular factors,' appellate review is limited to ascertaining 'whether a district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy.'") (quoting *Taylor*, 487 U.S. at 336–37).

1

We now turn to the question of whether the District Court gave appropriate consideration to these factors and acted within its discretion in dismissing the first superseding indictment without prejudice.[4] The first factor is "the seriousness of the offense." 18 U.S.C. § 3162(a)(2). This element "centers primarily on society's interest in bringing

---

[4] As a threshold matter, the Government now concedes that it did not reset the speedy trial clock by obtaining a second superseding indictment in response to Stevenson's motion to dismiss. As we have explained, "[w]hen subsequent charges are filed in a supplemental indictment that charge the same offense as the original indictment or one required to be joined therewith . . . the speedy trial period commences with the *original* filing." *United States v. Lattany*, 982 F.2d 866, 872 n.7 (3d Cir. 1992) (emphasis added). Hence, the second superseding indictment did not rescue the three original charges of the first superseding indictment (conspiracy to distribute a controlled substance, unlawful use of a communication facility, and possession of a stolen firearm). On the other hand, "[i]f the subsequent filing charges a new offense that did not have to be joined with the original charges, then the subsequent filing commences a new, independent speedy trial period." *Id.* Because none of the *new* charges added in the second superseding indictment were required to have been joined with the three original charges, the District Court was correct in dismissing only those three counts. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) (holding that offenses requiring proof of different elements are distinct and need not be charged together); *United States v. Xavier*, 2 F.3d 1281, 1291 (3d Cir. 1993).

the particular accused to trial." *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988). The logic behind this factor is intuitive: "[t]he graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence." *Id.*

Stevenson concedes that the drug and firearm charges at issue are serious because "overwhelming precedent acknowledg[es] the serious nature of such charges." Stevenson Br. 19. *See, e.g.*, *Taylor*, 487 U.S. at 328, 338–39 ("We have no reason to doubt" that "charges of conspiracy to distribute cocaine and possession of 400 grams of cocaine with intent to distribute" are "serious."); *United States v. Williams*, 314 F.3d 552, 559 (11th Cir. 2002) (conspiracy to distribute and possession with intent to distribute cocaine are "extremely serious" offenses under the Speedy Trial Act whose seriousness is compounded by possession of a firearm during the offenses); *United States v. Brown*, 770 F.2d 241, 244 (1st Cir. 1985) (charges for distribution and conspiracy to distribute cocaine are "undeniably serious" and "militate in favor of dismissal without prejudice"); *United States v. Simmons*, 786 F.2d 479, 485 (2d Cir. 1986) (possession of heroin with intent to distribute is "serious" within the meaning of the Speedy Trial Act); *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000) (possession of cocaine with intent to distribute is a serious offense); *United States v. Wright*, 6 F.3d 811, 814 (D.C. Cir. 1993) (same). We join our sister courts today and hold that Stevenson's heroin and firearms offenses are serious crimes for purposes of the Speedy Trial Act. Accordingly, the District Court rightly held that the first factor weighed in favor of dismissal without prejudice.

11

The second consideration—the facts and circumstances that led to dismissal—also supports the District Court's decision. This factor requires courts to consider the reasons for the delay: did it stem from "intentional dilatory conduct" or a "pattern of neglect on the part of the Government," or rather, from a relatively benign hitch in the prosecutorial process? *United States v. Cano-Silva*, 402 F.3d 1031, 1036 (10th Cir. 2005) ("In determining whether the facts and circumstances warrant dismissal with prejudice we focus on the culpability of the conduct that led to the delay."); *see also United States v. Blevins*, 142 F.3d 223, 226 (5th Cir. 1998) ("Regarding the facts and circumstances leading to the dismissal, we look to whether the Government sought the resultant delays for ulterior purposes as well as whether the Government's failure to meet deadlines was repetitive, regular, and frequent with respect to this defendant.").

Applying these principles, the District Court reasonably concluded that although "the Government certainly neglected its duties by failing to bring th[e] case to trial" with sufficient dispatch, the circumstances indicated that the error was "relatively innocent and harmless." App. 43. For instance, there was no evidence that the Government had acted in bad faith or to gain some tactical advantage. *See United States v. Becerra*, 435 F.3d 931, 937 (8th Cir. 2006) (bad faith or willful misconduct can support dismissal with prejudice); *United States v. Medina*, 524 F.3d 974, 987 (9th Cir. 2008) (same); *Taylor*, 487 U.S. at 339. Nor was there reason to believe that the Government had engaged in a "pattern of neglect." *Taylor*, 487 U.S. at 338–39 (contrasting a "truly neglectful attitude" with "isolated unwitting violation[s]"); *see also United States v. Kottmyer*, 961 F.2d

569, 572–73 (6th Cir. 1992) (affirming dismissal without prejudice where no "pattern of neglect" or "intentional dilatory conduct" had been shown); *United States v. Clymer*, 25 F.3d 824, 831–32 (9th Cir. 1994) (noting that "the sheer length of the [delay] involved" in a Speedy Trial Act violation may significantly impact whether dismissal with prejudice is warranted).

Stevenson faults the District Court for looking to the number of *excludable* days in addition to the length of the non-excludable delay in the course of its analysis, but we perceive no error in that regard. In reviewing the events that led to the Speedy Trial Act violation, the Court noted that the non-excludable days that had elapsed between Stevenson's arraignment and his motion to dismiss were dwarfed by the hundreds of days that had been excluded—virtually all due to motions made by Stevenson and his codefendants.[5] But the Court did not examine the number of excludable days as part of a balancing exercise. Rather, it did so to inform its evaluation of the litigation as a whole and indicated that the Government's impermissible delay was "explainable in light of the repeated delays and the chaotic nature of th[e] case, which, at its height, included eight coconspirator defendants, several of whom were in the process of negotiating plea

---

[5] For instance, 33 of the 34 motions for extensions of time and for continuances were filed by Stevenson and his codefendants. Such delays were no doubt compounded by Stevenson's initial refusal to admit that he was, in fact, Terrell Stevenson in his early appearances before the Court (posing instead as "Stevenson's representative"), as well as his peculiar insistence that the District Court lacked jurisdiction because the case belonged in admiralty court.

13

arrangements at the time that the Speedy Trial violation occurred."[6] App. 43–44. Taken together, these facts and circumstances support the District Court's conclusion that the second statutory factor also favored dismissal without prejudice.[7]

---

[6] Contrary to Stevenson's assertion, this assessment comported with the Government's explanation for the non-excludable delay. Accordingly, his citation to the pre-*Taylor* case, *United States v. Russo*, for the proposition that "[s]ome affirmative justification must be demonstrated to warrant a dismissal without prejudice" is inapposite. 741 F.2d 1264, 1267 (11th Cir. 1984) (per curiam) (reversing the district court's decision to dismiss without prejudice where the only reason for a several-month delay was the government's negligence). In any event, we view *Russo* as an outlier and are inclined to agree with its dissent. *See id.* at 1268 (Atkins, J., dissenting). In particular, the majority's terse consideration of the Speedy Trial Act factors in that case not only was insufficiently deferential to the district court, but also superimposed a strong "affirmative justification" requirement on the "facts and circumstances" factor—thereby putting a thumb on the scale in favor of dismissal with prejudice—that is both absent from the text of the statute and inconsistent with the Supreme Court's subsequent instruction in *Taylor* that a bare assertion that there was "no excuse" for a given delay affords inadequate basis for dismissal with prejudice. 487 U.S. at 339.

[7] The only Speedy Trial Act violation Stevenson alleged in the District Court was the 103-day non-excludable period between October 25, 2013, and February 7, 2014. He now argues for the first time that the total number of non-

14

The last statutory factor—the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice—also supports the Government. "The main considerations that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act."[8] *United States v. Howard*, 218 F.3d 556, 562 (6th

---

excludable days following his arraignment was actually *165* days. Our review of the docket supports this figure, but the District Court was not required to "scour the record to make the case of a party who d[id] nothing," *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989), and Stevenson has not claimed it was improper for the District Court to rely on the parties' stipulation as to the delay. Regardless, the District Court opined that "[e]ven if there [were] other nonexcludable days that the parties [did not bring] to the Court's attention," the broader facts and circumstances still weighed in favor of dismissal without prejudice in light of the defendant-driven deluge of excludable days throughout the protracted run-up to trial and the disorder they produced. App. 43.

[8] The Supreme Court has suggested that prejudice to the defendant is among the "other[]" non-express factors that the Speedy Trial Act directs district courts to consider. *See Taylor,* 487 U.S. at 333–34 (gleaning from the legislative history "the relevance of prejudice to the defendant"); *id.* at 344 (Scalia, J., concurring in part) (arguing that the facts "(1) that prejudice to the defendant is one of the factors that the

Cir. 2000) (internal citation and quotation marks omitted); *see also Blevins*, 142 F.3d at 226. The District Court concluded that this factor weighed in favor of dismissal without prejudice, reasoning that it was "very difficult to discern how Stevenson could plausibly have been prejudiced by the delay that occurred," that he had offered no evidence of prejudice, and that there had been no Government misconduct beyond the bare fact of the delay. App. 44.

Stevenson counters by arguing that he suffered actual prejudice because the delay enabled the Government to reach plea agreements with some of his co-defendants and turn them against Stevenson. We are not persuaded for several reasons. First, at least two co-defendants pleaded guilty and agreed to testify against Stevenson well before the speedy trial clock expired. Second, there is no evidence of record that

---

phrase 'among others' in § 3162(a)(2) refers to, and (2) that that factor is not necessarily determinative [are] so utterly clear from the text of the legislation that there is no justification for resort to the legislative history"). Courts have widely recognized, however, that this technically distinct factor often fits quite naturally into assessments of the third express factor. *See, e.g.*, *United States v. Sykes*, 614 F.3d 303, 309 (7th Cir. 2010) ("That the court should consider whether the defendant has been prejudiced is implicit in th[e] broadly stated formula [of § 3162(a)(2)]."); *United States v. Godoy*, 821 F.2d 1498, 1506 (11th Cir. 1987) ("The third factor makes clear the flexible, balancing approach required under § 3162(a)(1). In addition, it provides authority for considering such aggravating and mitigating factors as the length of the delay and the prejudice to the defendant."); *Campbell v. United States*, 364 F.3d 727, 731 (6th Cir. 2004).

the Government delayed the prosecution to facilitate turning witnesses against Stevenson. Third, Stevenson has not shown that the Speedy Trial Act violation undermined his "ability to prepare for trial." *United States v. Hernandez*, 863 F.2d 239, 244 (2d Cir. 1988). Nor is there any indication that the delay impaired Stevenson's ability to mount an effective defense; for instance, no witnesses or evidence became unavailable as a result of the delay. *Campbell v. United States*, 364 F.3d 727, 731 (6th Cir. 2004); *United States v. Saltzman*, 984 F.2d 1087, 1094 (10th Cir. 1993) ("[T]he defendant has a burden under the [Speedy Trial] Act to show *specific prejudice*.") (emphasis added). Because its conduct was unintentional, "penalizing the government for the delay [would not appreciably] deter any similar behavior in the future." *United States v. Abdush-Shakur*, 465 F.3d 458, 463 (10th Cir. 2006). And although the delay at issue was significant, Stevenson's crimes were very serious and the "administration of justice would be harmed if reprosecution were barred." *United States v. Hamell*, 3 F.3d 1187, 1189 (8th Cir. 1993); *see also United States v. May*, 819 F.2d 531, 534 (5th Cir. 1987) ("When the charges are serious, courts should impose the sanction of dismissal with prejudice only for a correspondingly serious delay, especially in the absence of a showing of prejudice.").[9]

---

[9] Notwithstanding the seriousness of his charges, Stevenson claims the District Court failed to weigh the gravity of his crimes against the length of the Government's delay. But the extent of a Speedy Trial Act violation has no bearing on the seriousness of the underlying charges against a defendant. Moreover, the Court properly factored the length and nature of the delay into its assessment of the facts and circumstances that led to dismissal and the lack of prejudice to Stevenson.

17

Moreover, the mere fact that the Government's case against Stevenson "may get stronger with time is not sufficient to support [his] position that his speedy trial right was violated" absent evidence of prejudice suffered because of the delay. *United States v. Trueber*, 238 F.3d 79, 91 (1st Cir. 2001). For these reasons, the District Court did not err in determining that the final statutory factor also weighed in favor of dismissal without prejudice.

*        *        *

"Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." *Taylor*, 487 U.S. at 342. The Government paid a price for its delay and has had to expend resources on appeal as a consequence. And while a zero-tolerance policy for Speedy Trial Act violations probably would reduce the incidence of such violations, "[i]f the greater deterrent effect of barring reprosecution could alone support a decision to dismiss with prejudice, the consideration of the other factors identified in § 3162(a)(2) would be superfluous, and all violations would warrant barring reprosecution." *Id.* There are cases in which the Speedy Trial Act violation is so substantial, the motive so inappropriate, or the resultant prejudice so great that it would be an abuse of discretion for a district court to fail to dismiss an indictment with prejudice. This case is not one of them.

B

Stevenson next challenges his conviction for fraud in relation to identification documents on several grounds. First, he claims the third superseding indictment did not include a

18

"plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). This requirement is rooted in the Fifth and Sixth Amendments of the Constitution. The former requires grand-jury indictment for "infamous crime[s]," U.S. Const. amend. V, and the latter insists upon notice to the defendant of the "nature and cause of the accusation," U.S. Const. amend. VI. Pursuant to these guarantees, the Supreme Court has instructed that an indictment must contain all the elements of the charged offense to ensure that a grand jury found them present and to "fairly inform[] a defendant of the charge against which he must defend," as well as "enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also Russell v. United States*, 369 U.S. 749, 768–70 (1962). In other words, "an indictment is facially sufficient if it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (internal quotation marks omitted). It is well established that "a defendant may contend that an indictment is insufficient on the basis that it does not satisfy the first requirement in that it fails to charge an essential element of the crime." *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013) (internal quotation marks omitted). That is Stevenson's contention here.

The third superseding indictment charged Stevenson with fraud in relation to identification documents under 18 U.S.C. § 1028(a)(7). Section 1028 has a somewhat disjointed

structure: subsection (a)(7) makes it illegal to "knowingly transfer[], possess[], or use[], without lawful authority, a means of identification of another person" in furtherance of or in connection with a crime, and then subsection (c)(3) also requires that "the production, transfer, possession, or use prohibited by this section is in or affects interstate or foreign commerce."[10] Because the statute does not make Stevenson's conduct illegal absent this latter requirement, the interstate commerce proviso is an essential element of the offense. *See, e.g.*, *United States v. Spears*, 697 F.3d 592, 601 (7th Cir. 2012), *overturned in part on other grounds*, *United States v. Spears*, 729 F.3d 753 (7th Cir. 2013) (en banc).

The rules governing how a charge must be set forth in an indictment are not exacting. Indeed, they "were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure." *United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011) (citation and internal quotation marks omitted). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy." *Huet*, 665 F.3d at 595 (internal quotation marks omitted). "Generally, an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *Id.*; *see also United States v. Troy*, 618 F.3d 27, 34 (1st Cir. 2010) ("An indictment that tracks the language of the underlying statute generally suffices to meet this standard; provided,

---

[10] Subsection (c) lists alternatives to this interstate commerce requirement but none apply.

20

however, that the excerpted statutory language sets out all of the elements of the offense without material uncertainty."). Moreover, we have eschewed any approach that insists upon magic words that perfectly mirror the statutory language of the charged offense: "[f]ailure to allege the statutory elements will not be fatal provided that alternative language is used or that the essential elements are charged in the indictment by necessary implication." *Gov't of V.I. v. Moolenaar*, 133 F.3d 246, 249 (3d Cir. 1998).

1

Although it presents a close case, Stevenson's charge of fraud in relation to identification documents adequately stated the essential elements of the offense. The indictment charged that Stevenson:

> did knowingly possess, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law, to wit: the defendant possessed a fraudulent Georgia Driver's License bearing his photograph but in the name of M.G.H. with the intent to aid in the commission of possession with intent to distribute a controlled substance and unlawful possession of a stolen firearm.

21

App. 262. Conspicuously absent from this language is a specific averment regarding the interstate commerce element of § 1028. Nevertheless, the District Court denied Stevenson's motion to dismiss because the count mentioned Stevenson's drug and firearm offenses, which expressly "rel[ied] on allegations of actions in or affecting interstate commerce." App. 50. "By alleging that the identification documents were used to facilitate these activities," the Court reasoned, the fraud count "adequately states one of the necessary elements of subsection (c), namely that the 'possession . . . prohibited by this section is in or affects interstate or foreign commerce.'" App. 50–51 (quoting 18 U.S.C. § 1028(c)(3)(A)). Although we agree with the Court's ultimate conclusion, this line of reasoning is problematic.

It is true that the Federal Rules of Criminal Procedure allow "[a] count [to] incorporate by reference an allegation made in another count." Fed. R. Crim. P. 7(c)(1). But "any such incorporation must be expressly done." *United States v. Knowles*, 29 F.3d 947, 952 (5th Cir. 1994) (finding a count defective where "the count that charged [the defendant] with possession of a firearm in a school zone, did not expressly refer to the interstate commerce nexus alleged" in a separate count); *see also United States v. Knox Coal Co.*, 347 F.2d 33, 38 (3d Cir. 1965) ("[U]nless the charging part of a conspiracy count specifically refers to or incorporates by reference allegations which appear under the heading of the overt acts, resort to those allegations may not be had to supply the insufficiency in the charging language itself."); *United States v. Fulcher*, 626 F.2d 985, 988 (D.C. Cir. 1980) ("Each count in an indictment is regarded as if it was a separate indictment. Each count must stand on its own, and cannot depend for its validity on the allegations of any other count not specifically

incorporated."); 11A Cyc. of Federal Proc. § 42:105 (3d ed.) ("[A]n incorporation by reference must be clear, full, and definite and must be expressly done. In addition, the matter incorporated by reference is limited to what is embraced within the reference clause.").

Here, the indictment's reference to the drug and firearm charges against Stevenson is insufficiently specific to incorporate the interstate commerce element into the fraud count. Indeed, we rejected a similar incorporation theory in *United States v. Spinner*. Spinner was charged with access device fraud in count one of an indictment and with bank fraud in count two. 180 F.3d 514, 515 (3d Cir. 1999). Both offenses included an interstate commerce element, but the government failed to allege that element in the first count. *Id.* We rejected the argument that count one could absorb the element from count two by intra-indictment osmosis, holding that the indictment's failure to allege all the elements of bank fraud required reversal of Spinner's access-device fraud conviction. *Id.* at 516. Accordingly, the District Court erred to the extent that it merely relied on the fact that other charges in the indictment require a nexus to interstate commerce to satisfy the independent requirement that the false identification charge allege such a connection.

Nevertheless, we read the indictment here to include the interstate commerce element of § 1028. The false identification count's reference to Stevenson's use of a Georgia identification document in Pennsylvania with the intent to further drug and firearm offenses alleges an effect on interstate commerce by "necessary implication." *Moolenaar*, 133 F.3d at 249; *see also United States v. Harms,* 442 F.3d 367, 372 (5th Cir. 2006) (explaining that so long as an indictment as a whole "fairly imports" an element, "an exact

23

recitation of [that] element . . . is not required"). Inherent in the indictment's description of Stevenson's actions is interstate commercial activity: the use of a fake Georgia drivers' license in Pennsylvania to further drug and firearm crimes. For this reason, we hold that the false identification count sufficiently communicated the interstate commerce element to the grand jury and informed Stevenson of the nature of the charges against him.

2

Even had the indictment failed to allege the interstate commerce element of the false identification offense, the error would have been harmless. Although we previously characterized a similar omission as a "fundamental defect" in an indictment that deprived us of jurisdiction and was not susceptible to harmless error review, *Spinner*, 180 F.3d at 516, that view is no longer valid. As we shall explain, an indictment that fails to include all essential elements of the charged offense is subject to harmless error review when the issue was raised in the trial court.

Our opinion that defective indictments required automatic reversal rested on two propositions: (1) that such defects are jurisdictional; and (2) that they constitute structural flaws not amenable to harmless error review. *See id.* at 515–16. The Supreme Court explicitly rejected the first proposition in *United States v. Cotton*. Evaluating an indictment that failed to include an *Apprendi* sentencing factor—a flaw the Fourth Circuit had deemed jurisdictional— the Court reversed, holding that "defects in an indictment do not deprive a court of its power to adjudicate a case." 535 U.S. 625, 630 (2002).

24

As for the second proposition, the fact that a defect in an indictment is not jurisdictional does not answer the question of how we should review timely challenges to an indictment's sufficiency. *See United States v. Prentiss*, 256 F.3d 971, 983 (10th Cir. 2001) (en banc), *overruled on other grounds as recognized by United States v. Sinks*, 473 F.3d 1315, 1321 (10th Cir. 2007). And the Supreme Court has reserved for later consideration the issue "whether the omission of an element of a criminal offense from a federal indictment can constitute harmless error." *United States v. Resendiz-Ponce,* 549 U.S. 102, 104 (2007). But the Court's guidance in analogous circumstances leads us to conclude that harmless error review applies because defective indictments do not constitute "structural" error.

Structural error "deprive[s] defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'" *Neder v. United States*, 527 U.S. 1, 8–9 (1999) (quoting *Rose v. Clark*, 478 U.S. 570, 577–78 (1986)). Such errors, which require automatic reversal, occur "only in a very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468 (1997). Moreover, "if the defendant had counsel and was tried by an impartial adjudicator, there is a *strong presumption* that any other errors that may have occurred are subject to harmless-error analysis." *Rose*, 478 U.S. at 579 (emphasis added). Stevenson cannot overcome that strong presumption in this case.

The Supreme Court's opinion in *Neder* is essentially dispositive here. In *Neder,* the Court held that a trial court's failure to instruct a petit jury on every element of the charged offense "does not *necessarily* render a criminal trial

25

fundamentally unfair or an unreliable vehicle for determining guilt or innocence" and is hence subject to harmless-error review. 527 U.S. at 9. That rule applies equally to the grand jury context because "a defendant's right to have a petit jury find each element of the charged offense beyond a reasonable doubt is no less important than a defendant's right to have each element of the same offense presented to the grand jury." *Prentiss*, 256 F.3d at 984. Nothing in the Supreme Court's precedents indicates otherwise. *See, e.g*, *Cotton*, 535 U.S. at 634 (suggesting that the Fifth Amendment grand jury right and the Sixth Amendment petit jury right both serve "vital function[s]" and should be protected equally). To the contrary, the Court "has classified only two types of grand jury related errors as structural, both involving discrimination in the selection of grand jurors." *Prentiss*, 256 F.3d at 983 (citing cases). "Otherwise, the Court has 'see[n] no reason not to apply [harmless error analysis] to error, defects, irregularities or variances occurring before a grand jury just as [it has] applied it to such error occurring in the criminal trial itself." *Id.* at 983–84 (quoting *United States v. Mechanik,* 475 U.S. 66, 71–72 (1986) (some internal quotation marks omitted)).

We recognize that the Court of Appeals for the Ninth Circuit has persisted in the view that a defective indictment requires reversal. *See United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005). Six judges of that Court have disagreed with that decision, which may indicate that the rule is on shaky ground even in the lone circuit that still adheres to it. *See United States v. Omer*, 429 F.3d 835 (9th Cir. 2005) (Graber, J., dissenting from denial of rehearing en banc) (opining that an "absolute rule" of "*automatic* reversal of any conviction in which the defendant timely, and correctly,

objected that an element of the crime was missing from the indictment . . . . makes no sense"). But irrespective of whether Judge Graber's dissent from the denial of rehearing en banc portends a change of course by the Ninth Circuit, we agree with at least six United States Courts of Appeals that harmless error review applies when an indictment's omission of an essential element is challenged in district court.[11] *See United States v. Allen*, 406 F.3d 940, 945 (8th Cir. 2005)*; United States v. Robinson*, 367 F.3d 278, 285 (5th Cir. 2004)*; United States v. Higgs*, 353 F.3d 281, 304–06 (4th Cir. 2003)*; United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 580 (6th Cir. 2002)*; Prentiss*, 256 F.3d at 981; *United States v. Corporan-Cuevas*, 244 F.3d 199, 202 (1st Cir. 2001).

The test for harmless error is set forth in Rule 52(a) of the Federal Rules of Criminal Procedure: "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." This requires us to determine whether "beyond a reasonable doubt . . . the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986) ("An otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."). To do so we ask: "(1) whether the indictment provided [Stevenson]

---

[11] Because it is inconsistent with the Supreme Court's treatment of defective indictments and jury instructions in *Cotton* and *Neder*, we are not bound by our decision in *Spinner* to the extent that it treated an indictment's omission of an essential element as a jurisdictional defect and structural error.

sufficient notice of the crime with which he had been charged and (2) whether [Stevenson] was harmed by losing the right to have the public determine whether there existed probable cause to charge the missing element." *United States v. Dentler*, 492 F.3d 306, 310–11 (5th Cir. 2007) (internal quotation marks omitted).

First, although the count at issue did not explicitly reference "interstate commerce," it nevertheless provided more than adequate statutory and factual detail to provide Stevenson notice of the charge against which he was to defend. *See United States v. Mallen*, 843 F.2d 1096, 1103 (8th Cir. 1988). Nor has Stevenson made any claim to the contrary.

We also resolve the second question in the Government's favor. To determine whether Stevenson was harmed by losing the right to have the grand jury make a probable cause determination regarding the interstate commerce element, we consider "whether, on the basis of the evidence that would have been available to the grand jury, any rational grand jury presented with a proper indictment would have charged that [Stevenson] committed the offense in question." *Dentler*, 492 F.3d at 311. Considering the same evidence as that which was available to the grand jury, the petit jury found Stevenson guilty after receiving explicit instruction as to the facts necessary to convict Stevenson on the interstate commerce element *beyond a reasonable doubt*. This verdict strongly supports the conclusion that a rational grand jury would have probable cause to charge Stevenson with each and every element of the fraudulent identification charge. *See United States v. Robinson*, 367 F.3d 278, 289 (5th Cir. 2004) (noting that "the petit jury's unanimous findings" are "at a minimum, persuasive evidence of how a grand jury

28

would find"). Indeed, especially in light of the expansive understanding of what constitutes "interstate commerce," it is hard to fathom how *any* rational person could conclude that a defendant who used an out-of-state false identification in furtherance of an interstate drug operation had probably not done so "in or affect[ing] interstate . . . commerce." 18 U.S.C. § 1028(c)(3)(a). Accordingly, to the extent that the indictment was deficient, Stevenson suffered no harm and the District Court did not err in denying his motion to dismiss that count of the indictment.

C

We turn next to Stevenson's Fourth Amendment claims. Stevenson filed a motion to suppress evidence acquired in the stop of his vehicle and the subsequent search of his residence. He claims that the stop was not supported by reasonable suspicion and that the affidavit in support of the search warrant for his residence failed to establish probable cause. We review the reasonable suspicion determination de novo, *Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003), and the probable cause assessment for whether the "magistrate had a 'substantial basis' for concluding that the affidavit supporting the warrant established probable cause," *United States v. Miknevich*, 638 F.3d 178, 181 (3d Cir. 2011).

1

It is well established that a law enforcement officer conducting a traffic stop "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). The Supreme Court has not reduced "reasonable

suspicion" to a "neat set of legal rules," preferring instead a "totality of the circumstances" approach focused on "whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273–74 (2002) (internal quotation marks omitted). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* at 273 (internal quotation marks omitted). Suspicion must be based on more than a "mere hunch" to be reasonable, but "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* at 274 (internal quotation marks omitted).

The record supports the District Court's conclusion that there was reasonable suspicion to stop Stevenson's vehicle. Prior to the stop, the authorities had identified Hood Promo as the hub of a heroin ring by conducting several controlled drug purchases there and by identifying several suspected members of the conspiracy, including a man going by the street name "Inf" or "Infinite." Law enforcement had learned that "Inf" was a 5'6" black male in his late twenties and his real name was probably Terrell Stevenson. The agents also knew that "Inf": drove a gray BMW, was reputed to be responsible for heroin distribution in the Wilkes-Barre area, and was a rapper in the group Currency Club. When those facts are considered in light of the fact that the State of New York had issued a warrant for Stevenson's arrest, the agents were well justified in stopping the gray BMW to determine whether "Inf"/Stevenson was behind the wheel. *See United States v. Cortez*, 449 U.S. 411, 417 (1981) (noting that "the

30

whole picture" must be taken into account in determining reasonable suspicion and that "[t]he process does not deal with hard certainties, but with probabilities"). Thus, the District Court did not err when it denied Stevenson's motion to suppress physical evidence and testimony relating to the stop of his vehicle and his use of false identification documents.

2

Stevenson next claims that the affidavit of probable cause in support of the warrant to search his residence was insufficient. In reviewing this affidavit, our role "is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

The affidavit submitted by Special Agent Davis provided extensive information of drug activity at Hood Promo and sufficiently connected Stevenson to the illegal conduct. It detailed: physical surveillance observing Stevenson transporting unknown objects to and from Hood Promo; the fact that Stevenson was wanted in New York on drug-related charges; a reliable confidential source's identification of Stevenson as a Hood Promo heroin dealer; and phone conversations and text messages between Stevenson, Thomas, and Bush that—while "cryptic and vague," in the words of the District Court, App. 19—were suggestive of drug activity.

Stevenson claims most of this is "guilt by association," and that the affidavit fails to adequately set forth the confidential informant's basis of knowledge for his claim that

Stevenson was involved in the Hood Promo heroin trafficking scheme. Stevenson Br. 38. Although the informant's basis of knowledge is cursory, the information provided was "corroborated through independent investigation" of Hood Promo, Thomas, Bush, Stevenson, and others. *See, e.g.*, *United States v. Yusuf*, 461 F.3d 374, 384 (3d Cir. 2006). Because the totality of the circumstances described in the affidavit provided a substantial basis for the magistrate to conclude that there was a "fair probability that contraband or evidence of a crime" would be found at Stevenson's residence, *Gates*, 462 U.S. at 238, the District Court did not err when it denied Stevenson's suppression motion.

D

Stevenson also claims he was deprived of a fair trial when the judge "vouched" for a Government witness. During the defense's cross-examination of Government witness William Nelson (the ringleader of the Hood Promo heroin operation), the following exchange occurred:

> Q.     . . . All right, now, let's talk about your prior record. You have a felony conviction, right?
>
> A.     Twenty-four years ago. Not admissible, and it can't be charged to me and I can't be given an enhancement. It was when I was 18 years old. So that's irrelevant, that's a moot point right now, sir, why are you bringing that up?
>
> Q.     Is that moot?

32

A.     Yes, it is moot.

THE COURT: Stop. Mr. Nelson, take it down a notch.

THE WITNESS: I'm gonna take it down, but he's trying to muddy    the    water. I'm being honest here.

THE COURT: I know you are. But let him ask his question.

App. 617–18. The defense did not object to the Court's remark, so we review it only for plain error. *See* Fed. R. Crim. P. 52(b).

Considering the entire record in context, we conclude that the District Court did not vouch for Nelson. *See United States v. Olgin*, 745 F.2d 263, 269 (3d Cir. 1984) ("A potentially prejudicial comment cannot be evaluated in isolation, out of context."). Faced with a witness's rising temper under the heat of counsel's attempt to impeach him with a decades-old conviction, the judge appropriately stepped in to cool passions. The judge's pacifying response "I know you are" to Nelson's flustered protestation that he was "being honest" and that defense counsel was trying to "muddy the water," App. 618, "should not be literally interpreted to mean that [the judge] would . . . under any circumstances believe anything that [Nelson] said." *United States v. Twomey*, 806 F.2d 1136, 1143 (1st Cir. 1986). In our view, no reasonable juror would have viewed the judge as actually vouching for the witness's testimony. Although "[t]here is no bright line separating remarks that are appropriate from remarks that may unduly influence a jury,"

33

*Olgin*, 745 F.2d at 269, the context of the exchange in this case shows that the trial judge's comment carried no improper sway.

The four-factor "sliding scale" test we articulated in *Olgin* to assess the propriety of a judge's comments supports our conclusion. 745 F.2d at 268. First, the comment lacked "materiality" because the judge was not actually speaking to Nelson's credibility or in any other way opining on matters "central to the defense." *Id.* at 269 (citing *United States v. Anton*, 597 F.2d 371, 374 (3d Cir. 1979) (reversible error where judge made "flat statement of disbelief of the testimony of the witness")). Nor was the comment of an "emphatic or overbearing nature" such that the jury might accept it "as controlling"—it was casual and palliative more than anything else. *United States v. Gaines*, 450 F.2d 186, 189 (3d Cir. 1971). Third, if the comment had crossed the line, any error would have been ameliorated by the judge's thorough instructions, which emphasized to the jury, *inter alia*, that it "should not take anything [the judge] may have said or done during the trial as indicating what [he] think[s] of the evidence or what [he] think[s] about what [the] verdict should be." App. 1151; *Olgin*, 745 F.2d at 269. Finally, our review of the Court's well crafted "jury instruction as a whole" confirms what common sense already suggests: the judge's remark had no prejudicial effect on Stevenson. *Olgin*, 745 F.2d at 269.

34

E

Stevenson's final argument is that the sentence imposed by the District Court was procedurally unreasonable.[12] We disagree.

Stevenson argues that the District Court committed procedural error by (1) treating the Guidelines as mandatory in contravention of *United States v. Booker*, 543 U.S. 220 (2005); (2) failing to give meaningful consideration to the sentence disparities between Stevenson and his co-defendants; and (3) failing to give meaningful consideration to the § 3553(a) sentencing factors.

His first point relies on the judge's statement to Stevenson at sentencing that he had enough prior convictions to qualify as a career offender under the Guidelines and that this was "significant . . . because it changes the way the law looks at you and it changes the way the law looks at you in a manner that I, in turn, must abide by." App. 1571. Stevenson quotes this statement for the proposition that the Court

---

[12] We review Stevenson's sentence under an abuse of discretion standard. *United States v. Tomko*, 562 F.3d 558, 565 (3d Cir. 2009) (en banc). The party challenging the sentence bears the burden of proving its unreasonableness. *United States v. King,* 454 F.3d 187, 194 (3d Cir. 2006). For its sentence to have been "procedurally" reasonable, the District Court must have correctly calculated the Guidelines range, given meaningful consideration to the § 3553(a) factors, and adequately explained the chosen sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007).

mistakenly thought itself bound by the Guidelines. Once again, context proves otherwise.

"District Courts engage in a three step process when imposing a sentence," the first being that "the defendant's guideline range is calculated." *United States v. Larkin*, 629 F.3d 177, 195 (3d Cir. 2010). *This* is the duty the judge was referring to, which he performed just sentences later, explaining: "that's why you're facing a total offense level here of 37 and a criminal history category of 6 because you are a Career Offender here." App. 1571. The Court was required to make this determination before moving on to consider any departure motions (step two) and the § 3553(a) factors (step three), and thus committed no error. *See Larkin*, 629 F.3d at 195.

Stevenson's second procedural argument fares no better. The District Court thoughtfully considered Stevenson's request for a downward departure from his high Guidelines range based on his co-defendants' substantially lesser sentences and reasonably decided against it. In particular, the Court found the disparities understandable in light of the contrast between the co-defendants' lower criminal history categories and acceptance of responsibility versus Stevenson's career offender status, risk of recidivism, and pointed lack of remorse. This assessment provided more than sufficient consideration of Stevenson's departure motion. *Cf. United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006).

Finally, Stevenson's contention that the District Court failed to give meaningful consideration to the § 3553(a) sentencing factors is belied by the record. The only argument Stevenson has raised in this regard is that the District Court did not account for his "disadvantaged upbringing and lack of

guidance as a youth." Stevenson Br. 52. In fact, the District Court gave careful consideration to Stevenson's "difficult childhood" and reasonably concluded that a within-Guidelines sentence was warranted in light of Stevenson's life of crime. App. 1570–72. Because the record shows that the District Court meaningfully considered all relevant sentencing factors, we reject Stevenson's contention that his sentence was unreasonable.

## III

All of the arrows in Stevenson's appellate quiver miss the mark, though one grazes its target. The District Court did not err in dismissing the first superseding indictment without prejudice, in denying his motion to dismiss the false identification count of the indictment, in denying his suppression motions, in making a statement obviously geared toward pacifying an emotional witness at trial, or in sentencing Stevenson to 360 months' imprisonment. Accordingly, we will affirm.