**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-2765 & 20-2766
_____

UNITED STATES OF AMERICA

v.

TRUMAN JONES,
                                          Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Nos. 3:16-cr-00127 & 3:19-cr-00160)
District Judge: Honorable A. Richard Caputo & Honorable Malachy E. Mannion
_____

Argued: July 7, 2021

Before: AMBRO, JORDAN, and BIBAS, *Circuit Judges*

(Filed: September 10, 2021)
_____

Richard Coughlin                          [ARGUED]
Federal Public Defender's Office
800–840 Cooper Street, Suite 350
Camden, NJ 08102

      *Counsel for Appellant*

Bruce D. Brandler
Alisan V. Martin                          [ARGUED]
United States Attorney's Office
240 West Third Street, Suite 316
Williamsport, PA 17701

Phillip J. Caraballo-Garrison
United States Attorney's Office
235 North Washington Avenue, Suite 311
Scranton, PA 18503

    *Counsel for Appellee*

_____

## OPINION[*]

_____

BIBAS, *Circuit Judge*.

A criminal defendant may not delay his trial and then complain that it took too long. Truman Jones is no exception. He *did* wait years for his trial. But because he contributed to much of the delay, did not complain until the last minute, and suffered no concrete harm, we will affirm his conviction. And because there were no errors with his sentence, we will affirm that too.

## I. BACKGROUND

The police caught Jones running a large drug ring from his apartment. Their search revealed a drug dealer's stash: guns, cash, and heroin. They arrested Jones, who immediately confessed.

Though his confession was speedy, his trial was not. First, there were years of pretrial litigation. Five codefendants pleaded guilty. Jones and his codefendants filed plenty of motions. And the government moved for continuances; Jones agreed to many of them. Eventually, trial was scheduled for more than three years after his arrest.

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

A week and a half before trial, Jones moved to dismiss based on the Speedy Trial Act. The District Court agreed but dismissed without prejudice. The government immediately filed a new complaint and then reindicted him on the same charges.

Though Jones again and again moved to dismiss on speedy-trial grounds (both statutory and constitutional), the District Court denied these motions. Nearly four years after his arrest, Jones was tried and convicted of drug and gun crimes. Plus, the court gave him a longer sentence for being an "organizer or leader" of an extensive criminal enterprise and for maintaining an apartment to distribute drugs.

On appeal, Jones argues that the District Court should have dismissed his case *with* prejudice, based on both the Act and the Sixth Amendment's Speedy Trial Clause. He also challenges his sentence enhancements.

## II. JONES SUFFERED NO SPEEDY-TRIAL VIOLATION

### A. Under the Act, the District Court properly dismissed without prejudice

The Act requires courts to try federal defendants within seventy days of their indictment. 18 U.S.C. § 3161(c)(1). Because Jones waited far longer than that, the District Court dismissed. But it exercised its discretion to dismiss *without* prejudice, so that he could be reindicted. § 3162(a)(2). Jones challenges this.

We review the District Court's factual findings for clear error and its decision for abuse of discretion. *United States v. Stevenson*, 832 F.3d 412, 419 n.3 (3d Cir. 2016). We ask whether "the [court's] judgment is supported … [by] the factors identified in the statute." *United States v. Taylor*, 487 U.S. 326, 337 (1988). Those three factors are the crime's

seriousness, the case's facts and circumstances, and the impact of a retrial on administering justice. § 3162(a)(2). All three factors support the District Court's exercise of its discretion.

*1. The seriousness of the crime.* As Jones concedes, both heroin and gun charges count as serious. Reply Br. 3; *Stevenson*, 832 F.3d at 420.

*2. The facts and circumstances of the case.* Governmental misconduct (like intentional delay or a pattern of neglect) can justify dismissal with prejudice. *Stevenson*, 832 F.3d at 420–21; *see Taylor*, 487 U.S. at 339. Here, the District Court reasonably found that the delay stemmed not from "[g]overnment misconduct," but rather "a confusing docket." App. 195. Much of the delay was due to plea negotiations, motions about counsel, and government continuances to which Jones's lawyer agreed. None of this reflects "bad faith" or intentional delay to "gain some tactical advantage." *Stevenson*, 832 F.3d at 420.

To try to get around the lack of neglect in *his* case, Jones argues that there is a pattern of neglect in the Middle District of Pennsylvania. But the statute does not tell courts to consider the facts and circumstances in the district. Instead, courts must look at "the facts and circumstances *of the case which led to the dismissal*." § 3162(a)(2) (emphasis added).

*3. The administration of justice.* Jones loses on this factor too, because the delay did not hurt him. To show "actual prejudice" (the "main consideration[ ]" under this prong), he must prove that the delay "undermined his ability to prepare for trial" or gave the government some other advantage. *Stevenson*, 832 F.3d at 422 (internal quotation marks omitted). He has not. The *only* fact he cites is that a witness died before trial. Yet the witness died just two months after the indictment, well before the speedy-trial clock ran out. Even if the government had tried Jones quickly, he would not have been able to call that witness.

4

Unable to specify harm to his defense, Jones argues that prolonged pretrial detention is inherently prejudicial. That is true, but not enough. He does not show that the delay hurt his trial preparation or unduly restricted his freedom. *See Taylor*, 487 U.S. at 340. He offers no evidence that the wait "disrupt[ed] his employment, drain[ed] his financial resources, curtail[ed] his associations, [or] subject[ed] him to public obloquy." *Id.* (quoting *Barker v. Wingo*, 407 U.S. 514, 537 (1972) (White, J., concurring)). Besides, Jones's lawyer agreed to many of the continuances. That suggests that the delay may have *helped* him prepare for trial.

Finally, Jones argued that the District Court should have considered the *extent* of the violation. Jones objects that it stopped counting after the seventy-day clock ran out. He is right that the court should have finished its count; the length of delay is relevant to prejudice. *Taylor*, 487 U.S. at 340–41. But the error was harmless. Jones still cannot show prejudice. Thus, having reviewed the statutory factors, we see no abuse of discretion.

## B. Jones's constitutional speedy-trial right was not violated either

Jones raises not only a statutory speedy trial claim but also a constitutional one. The District Court rejected this argument, and so will we. We review the District Court's factual findings for clear error and its ultimate legal conclusion de novo. *United States v. Battis*, 589 F.3d 673, 677 (3d Cir. 2009).

Because Jones had to wait nearly four years for trial, we must scrutinize the delay. *Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993). To do that, we balance the length of delay, the reasons for the delay, the prejudice to Jones, and how urgently he asserted his speedy-trial right. *Barker*, 407 U.S. at 530–33.

The four *Barker* factors do not support dismissal. On the one hand, Jones's long wait cuts strongly in his favor. *Battis*, 589 F.3d at 679. On the other hand, Jones dragged his feet. He waited more than three years after his arrest to assert his right only "on the eve of trial." App. 280.

Nor is the government more to blame than Jones. The delay was caused by reasonable requests by both sides for more time, Jones's and his codefendants' motions, long pretrial negotiations, and various defendants' disagreements with their lawyers.

Finally, the prejudice to Jones was slight. True, a three-year delay is presumptively prejudicial. *Battis*, 589 F.3d at 682. But the presumption is offset by Jones's "acquiesce[nce] in the delay," as he agreed to many of the government's continuances. *Id.* And Jones cannot point to a single way in which the delay concretely harmed his trial preparation. In *Barker*, even though the five-year wait for trial was "extraordinary," the "prejudice was minimal" because Barker had "acquiesced" in the delay and none of his "witnesses … became unavailable" in the meantime. 407 U.S. at 533–35. So too here. On balance, the *Barker* factors do not favor dismissal.

### III. BOTH SENTENCE ENHANCEMENTS WERE PROPER

We review the District Court's reading of the Sentencing Guidelines de novo and its findings of fact for clear error. *United States v. Zabielski*, 711 F.3d 381, 386 (3d Cir. 2013). We review its application of the Guidelines to the facts for abuse of discretion. *United States v. Thung Van Huynh*, 884 F.3d 160, 165 (3d Cir. 2018). Under these standards, the District Court properly applied both sentencing enhancements.

6

## A. Jones "maintain[ed] a premises" to distribute drugs

Because Jones sold heroin from his apartment, the District Court enhanced his sentence by two levels for "maintain[ing] a premises for the purpose of … distributing a controlled substance." U.S.S.G. §2D1.1(b)(12). Jones argues that because he also slept in his drug den, dealing was not the *only* purpose for which he maintained it.

But the Guideline's text forecloses his argument. The Commission required not that drug dealing be "*the sole* purpose," but just "*the* purpose." That means that "[t]he actor's purpose must be more than merely incidental. But it need not be his *sole* purpose." *United States v. Safehouse*, 985 F.3d 225, 237 (3d Cir. 2021) (citation and internal quotation marks omitted). Because Jones kept an apartment to deal drugs, his argument fails.

## B. Jones was an "organizer or leader" of an extensive drug ring

Though Jones admits that he was involved in an "extensive" drug ring, he claims that he was not an "organizer or leader" of it. U.S.S.G. §3B1.1(a). Because this enhancement is a "fact-driven test," we review for clear error. *Thung Van Huynh*, 884 F.3d at 165.

The District Court did not err. Jones was running an extensive drug ring: Drugs bearing his stamp were found at various times and places in the hands of different dealers. He oversaw the ring's finances, fronted drugs to other dealers, kept track of their debts in a ledger, and demanded repayment. He also stored the drugs in his stash house. And he sometimes sent out other gang members as drug couriers.

All of this suggests that Jones's ring was not just a loose, casual cluster of occasional traders, but a vertically integrated firm. We should not easily disturb a district court's finding of fact. *United States v. U. S. Gypsum Co.*, 333 U.S. 364, 395 (1948). On our deferential

7

review, the record confirms that Jones "exercised some degree of control over others." *United States v. Helbling*, 209 F.3d 226, 243 (3d Cir. 2000) (internal quotation marks omitted). So the enhancement was proper.

\* \* \* \* \*

Although Jones had to wait almost four years for his day in court, he acquiesced in much of the delay and suffered no prejudice. And because he ran a drug den and controlled a drug ring, the District Court rightly enhanced his sentence. We will thus affirm.