**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3171
_____

UNITED STATES OF AMERICA

v.

LANCE GREEN,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No. 3:20-cr-00165-001)
Honorable Robert D. Mariani, U.S. District Judge
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 12, 2022

Before: KRAUSE, BIBAS, and RENDELL, *Circuit Judges*

(Filed: September 15, 2022)

_____

**OPINION**[*]
_____

---

[*]This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Appellant Lance Green appeals his judgment of conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and for possessing a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). Those convictions resulted from an indictment originally returned on January 23, 2018 and a jury trial that commenced over three years later on March 15, 2021. In between, the indictment was dismissed twice without prejudice for violations of the Speedy Trial Act, and the District Court was called upon to resolve a bevy of pretrial motions, almost all of which were filed by Green. Green now challenges the District Court's denials of his motion to dismiss the indictment with prejudice, his motion for a mistrial, and his motion for a judgment of acquittal or a new trial on speedy trial and numerous other grounds. For the reasons explained below, we will affirm the judgment of the District Court on each.

I.     **DISCUSSION**[1]

Green takes issue with seven findings of the District Court, each of which, he contends, requires us to vacate his conviction. None of his arguments is persuasive.

**a. Denial of Green's Motion to Dismiss the Indictment**

On appeal, Green renews his claims of error in the grand jury proceedings that underlay his motion to dismiss the indictment before the District Court. We conduct a plenary review of a district court's legal conclusions and review its factual findings for

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

clear error. *United States v. Stock*, 728 F.3d 287, 291 (3d Cir. 2013) (citation omitted). Here, we perceive no error, legal or factual.

First, Green contends that a question posed by the Assistant United States Attorney (AUSA) to a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) agent before the grand jury contained an inaccurate premise that prejudiced him. For Green's appeal to succeed, we must find "'that the violation substantially influenced the grand jury's decision to indict,' or that there was 'grave doubt' to that effect." *United States v. Alexander*, 985 F.3d 291, 297 (3d Cir. 2021) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)). But "misstatements of fact" in an AUSA's question in grand jury proceedings are made harmless by a subsequent guilty verdict, as we have here, regardless of their materiality, *United States v. Bansal*, 663 F.3d 634, 660 (3d Cir. 2011); *see United States v. Mechanik*, 475 U.S. 66, 70 (1986), so the District Court properly rejected this argument.

Second, Green asserts that the indictment improperly relied on hearsay evidence. But a prosecutor can introduce hearsay evidence before a grand jury without rendering an indictment invalid "unless (1) non-hearsay is readily available; and unless (2) the grand jury was also misled into believing it was hearing direct testimony rather than hearsay; and unless (3) there is also a high probability that had the jury heard the eye-witness it would not have indicted the defendant." *United States v. Ismaili*, 828 F.2d 153, 164 (3d Cir. 1987) (citing *United States v. Wander*, 601 F.2d 1251, 1260 (3d Cir. 1979)). And here, Green concedes there is "no evidence that the jury was misled into believing it was hearing direct testimony." Opening Br. at 13. Thus, we lack "grave doubt" that hearsay

3

influenced the grand jury's indictment. *Alexander*, 985 F.3d at 297 (quoting *Bank of Nova Scotia*, 487 U.S. at 256).

Finally, Green argues that the District Court violated the Confrontation Clause when it reviewed the AUSA's affidavit explaining the manner in which she conducted the grand jury proceedings *ex parte* and *in camera*. Because this was not raised before the District Court,[2] we review only for plain error. *United States v. Moreno*, 809 F.3d 766, 773 n.3 (3d Cir. 2016).

In this context, the Confrontation Clause would preclude only the "admission of testimonial statements" of a witness who did not appear before the grand jury. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). To establish that a statement in an affidavit was "testimonial," a defendant must show it was made by a "'witness[] *against him*' . . . proving one fact necessary for his conviction," *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310, 313 (2009) (emphasis in original) (quoting U.S. Const. amend. VI)—in other words, with the "'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.'" *Bullcoming v. New Mexico*, 564 U.S. 647, 659 n.6 (2011) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)). The affidavit that Green is challenging, however, was merely a description by the AUSA for the District Court of *how* the testimony of witnesses was delivered to the grand jury, and

---

[2] Green did not preserve this challenge. The Confrontation Clause is not cited in his motion for judgment of acquittal or motion for a new trial. When the District Court requested the government prepare the affidavit, Green did not object on Confrontation Clause grounds. Finally, when the District Court ruled on Green's motion to dismiss the indictment, it does not appear that Green objected at all.

4

the affidavit's "primary purpose" was not "creat[ing] a record for trial" of facts that go to any element that the government had to prove. *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). The Confrontation Clause thus simply is not implicated here.

In sum, there was no error in the grand jury proceedings, and the District Court properly declined to dismiss the indictment.

### b. Alleged Improper Comments by the AUSA in Closing Argument

Next, Green contends that the District Court should have granted his motion for a mistrial or new trial based on the AUSA's mischaracterization of an officer's trial testimony. Specifically, he asserts that the AUSA misrepresented that testimony by implying Nasheena Curry was on the phone with Green when she said, "bring the strap" (i.e., gun).

We review the denial of a motion for a mistrial in this context for abuse of discretion. *See United States v. Bailey*, 840 F.3d 99, 132 (3d Cir. 2016). If the AUSA's statement was improper, a new trial would be warranted unless it is "*highly probable* that the error did not contribute to the judgment." *United States v. Mastrangelo*, 172 F.3d 288, 297 (3d Cir. 1999) (emphasis in original) (citation omitted).

The error here does not clear that threshold. Not only did the timely objection of Green's counsel prevent the AUSA from finishing her statement and connecting Green to the gun, but there is also evidence in the record that Curry *did* say "bring the strap" on the phone: Neither Green nor Nakirah Williams had arrived at that point, and only Green was later seen with a gun. The District Court also instructed the jury that closing arguments are not evidence both before trial and before deliberations began. In short, the AUSA's

5

statements did not infect the trial with unfairness such that Green was denied due process, and the District Court did not abuse its discretion in denying Green's motion for a mistrial or a new trial on this basis. *See Bailey*, 840 F.3d at 132; *Mastrangelo*, 172 F.3d at 297.

### c. Sufficiency Challenge to Knowledge Element

Green's third argument is that he should have been granted an acquittal because there was insufficient evidence for a reasonable jury to conclude he knew that the gun's serial number had been obliterated. The question on review of the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424–25 (3d Cir. 2013) (emphasis in original) (citation omitted).

That is a low threshold, and it is easily met here. An ATF agent testified that the serial number of the gun in question, which was conspicuously located on a silver plate on a black gun, was "directly underneath the barrel," and that ATF agent and a state police officer both testified that the scratches and gouges on the plate were easily visible. On this record, given the links between Green and the gun, a rational jury easily could have found the essential element of knowledge was satisfied beyond a reasonable doubt. *See id.* at 424–25.

### d. Reasonable Suspicion for the Car Stop

Green next disputes the District Court's denial of his motion to suppress the handgun and his DNA, which he contends were the fruits of a stop for which the officers

6

lacked reasonable suspicion. We review the denial of a motion to suppress "for clear error as to the underlying factual findings and exercise plenary review over its application of the law to those facts." *United States v. Burnett*, 773 F.3d 122, 130 (3d Cir. 2014) (citation omitted). When assessing the legality of a traffic stop, "[w]e review objectively the officer's rationale, by looking to the facts and circumstances confronting him or her, to determine whether his or her actions during the stop were reasonable." *United States v. Clark*, 902 F.3d 404, 409 (3d Cir. 2018) (citation omitted).

The District Court's factual findings make clear that the officers here acted reasonably, because they had the requisite "particularized and objective basis for suspecting the particular person stopped of criminal activity." *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). They knew the car's driver had arrived during the short time between the two altercations; they had reason to believe that a gun had been involved in the second altercation; and they saw Curry, whom they recognized from their investigation of the first altercation, get into that car with a man who matched the description of the person who brandished that gun. These facts and circumstances made the stop a reasonable one, especially because officers can rely, as relevant here, on their specialized training, their experience, and tips from sources whose information is proven reliable. *See United States v. Nelson*, 284 F.3d 472, 478 (3d Cir. 2002).

Green's counterarguments are not persuasive. Whether Pennsylvania law bars officers from making misdemeanor arrests if they did not witness the offense, *see* Pa. R. Crim. P. § 502(2), does not determine whether the stop was reasonable under the Fourth

7

Amendment. *See Virginia v. Moore*, 553 U.S. 164, 172 (2008) (citations omitted) (noting that "[w]hile '[i]ndividual States may surely construe their own constitutions as imposing more stringent constraints on police conduct . . . ,' state law did not alter the content of the Fourth Amendment"). Nor does it matter that the officers only had evidence that Green previously had been engaged in criminal activity, *Cortez*, 449 U.S. at 417 n.2 ("Of course, an officer may stop and question a person if there are reasonable grounds to believe that person is wanted for past criminal conduct."), or that they had left their jurisdiction by the time they stopped the car, *United States v. Sed*, 601 F.3d 224, 228–29 (3d Cir. 2010) (holding that a seizure by Pennsylvania state police was reasonable under the Fourth Amendment even though it took place in Ohio).

### e. Dismissal of the Previous Indictments Without Prejudice

Green also argues that both dismissals of his indictments for violations of the Speedy Trial Act should have been with prejudice. Whether a district court should dismiss with or without prejudice depends on at least three factors: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). We review a district court's decision to dismiss a case without prejudice for abuse of discretion, and we review its factual findings for clear error. *See United States v. Stevenson*, 832 F.3d 412, 419 n.3 (3d Cir. 2016) (citation omitted).

Here, as to the first indictment, the District Court's decision to treat Green's charges as serious accords with our precedent. *See id.* at 419–20 (collecting cases

8

holding that drug and firearms offenses are "serious crimes for purposes of the Speedy Trial Act"). While the second factor may weigh slightly in Green's favor because the Government should have requested a trial date, this is not enough to reverse. We see no abuse of discretion, as "there was no evidence that the Government had acted in bad faith or to gain some tactical advantage." *Id.* at 420 (citations omitted). Nor was it an abuse of discretion to weigh the third factor against Green where the charges against him were serious and the delay was relatively short.

The same is true of the second dismissal. The District Court made similar findings concerning the seriousness of Green's offense, which, combined with the lengthy sentence he faced as an armed career criminal, weighed in favor of dismissal without prejudice. *Id.* at 419–20; *see also United States v. Jones*, 601 F.3d 1247, 1257 (11th Cir. 2010). On the second factor, the Court pointed out that there was still no evidence of bad faith by the Government. To the contrary, the Government had moved to set a trial date two days after the resolution of Green's pretrial motions. While the fact of a second Speedy Trial Act violation gives us pause, that alone does not amount to a "pattern of neglect" or "intentional dilatory conduct." *Stevenson*, 832 F.3d at 420 (citation omitted). And on the third factor, the Court found that although Green's lengthy pretrial incarceration seriously interfered with his liberty, much of that delay was attributable to his pretrial motions, and because there was no evidence of prosecutorial misconduct, dismissal with prejudice would serve no deterrent effect. So this was not an abuse of discretion either. *See id.* at 422.

9

### f.  Potential Violation of Green's Sixth Amendment Rights

Green also argues that the District Court should have dismissed his indictment because his Sixth Amendment speedy trial rights were violated.  We review that claim *de novo* and accept the District Court's factual findings absent clear error.  *See United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (citing *United States v. Battis*, 589 F.3d 673, 677 (3d Cir. 2009)).  Our determination is guided by *Barker v. Wingo*, which identifies four factors to determine if the Government violated Green's speedy trial rights: (1) the "[l]ength of delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right," and (4) "prejudice to the defendant."  407 U.S. 514, 530 (1972).

In this case, the first factor, the length of the delay, weighs in Green's favor.  We look at both whether the delay was long enough to trigger the *Barker* analysis and whether the delay intensified any prejudice Green suffered.  *Battis*, 589 F.3d at 678 (citing *Doggett v. United States*, 505 U.S. 647, 652 (1992)).  Given its similarity to the forty-five-month delay that we found triggered the *Barker* analysis and "intensif[ied] any prejudice caused by the delay" in *Battis*, Green's case satisfies both aspects of the first factor.  589 F.3d at 679.

The reason for the delay, however, weighs strongly against Green.  There are three types of delays, each of which we weigh differently: (1) deliberate efforts to delay trial, (2) delays due to neutral reasons like "negligence or overcrowded courts," and (3) excusable delays.  *Id.* (quoting *Barker*, 407 U.S. at 531).  Green does not identify any delays in the first category, and even viewing events in the light most favorable to Green, we can only identify at most forty-four days of delay that could be blamed on the

10

Government.[3]  On the other hand, over two years of the delay can be attributed to Green, App. I 11–12, so this factor favors the Government.  *Cf. Battis*, 589 F.3d at 679–80.

The third *Barker* factor, whether and how Green asserted his speedy trial rights, weighs slightly against him.  Green clearly asserted his rights each time he filed a motion to dismiss.  But each one was filed later than it could have been.  He filed the first over eight months after the Speedy Trial Act clock had run.  The second came after some delay as well, with Green changing his mind multiple times about whether and when he would file.  While the resultant delay was short, this conduct raises questions about how vigorously Green asserted his rights.

Prejudice, which is the fourth *Barker* factor, does not help Green either.  The Sixth Amendment protects against three sorts of prejudice: (1) oppressive pretrial incarceration, (2) increased anxiety, and (3) most importantly, damage to one's defense.  *Barker*, 407 U.S. at 532; *Doggett*, 505 U.S. at 654.  On the first, much of the time Green spent incarcerated can be attributed to his pretrial motions, and pretrial delay and incarceration can be protracted without being oppressive.  *See Barker*, 407 U.S. at 532–36 (finding the defendant was only minimally prejudiced even though there had been a five-year delay);

---

[3] In reality, and in view of our precedent, the number of days of delay attributable to the Government is likely far less, as the days that we have attributed to the Government include, for example, what appear to be brief postponements of Green's arraignment, the two days between the District Court's denial of Green's motion to suppress and the Government filing a motion to set a trial date, and the time it took to dispose of that motion around when the case was assigned to a new judge.  In contrast, delays attributable to Green include multiple pretrial motions, multiple extensions of time to file those motions, and changes in counsel.

11

*Hakeem v. Beyer*, 990 F.2d 750, 760–62 (3d Cir. 1993) (finding fourteen months of pretrial incarceration did not *per se* count as oppressive pretrial incarceration). On the second, while Green has alleged cognizable harms, including health problems, losing his job, and strain on his relationships, *see Betterman v. Montana*, 578 U.S. 437, 444 (2016); *Hakeem*, 990 F.2d at 760–62, the District Court found that these were not supported with specific evidence, and its finding was not clearly erroneous. Nor does the third type of prejudice tip the scales in his favor. The delay here was not long enough to be presumptively prejudicial. *See Battis*, 589 F.3d at 682–83; *cf. Doggett*, 505 U.S. at 657–58. And Green's inability to locate two potential witnesses cannot help him, because he has not established their potential exculpatory value. *See United States v. Shulick*, 18 F.4th 91, 103 (3d Cir. 2021); *United States v. Harris*, 566 F.3d 422, 433 (5th. Cir. 2009).

### g. Testimony by the Government's Expert

Finally, Green argues that the District Court should not have allowed forensic DNA analyst Ut Dinh to testify about the likelihood of a link between the DNA found on the gun and Green's DNA. We review evidentiary decisions only for an abuse of discretion, *Bailey*, 840 F.3d at 117, and in the case of expert testimony consider whether a "broad range of knowledge, skills, and training qualif[ied] [the] expert," *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (citation omitted).

For an expert to be properly qualified to testify on an issue, she must "possess specialized expertise." *Id.* (citation omitted); *see also* Fed. R. Evid. 702. Here, Dinh was plainly qualified to testify regarding the likelihood that the DNA found on the gun was Green's. She was trained on how to use the program that generated these statistics and

12

had used it over 100 times; her lab had been appropriately accredited and audited; and it was core to her job as a DNA analyst to quantify the potential link between a person and a DNA profile. Thus, the analysis that linked Green to the DNA found on the gun easily fell within Dinh's "broad range of knowledge, skills, and training." *Pineda*, 520 F.3d at 244 (citation omitted).

Nor did the District Court abuse its discretion when it upheld the reliability and relevance of Dinh's testimony concerning statistical likelihood analysis. At this stage, a court asks if "the testimony is the product of reliable principles and methods" and whether the expert reliably applied those principles. Fed. R. Evid. 702(c)–(d). We look at several factors, including "whether a method consists of a testable hypothesis," "whether the method is generally accepted," and "the existence and maintenance of standards controlling the technique's operation." *Pineda*, 520 F.3d at 247–48 (citations omitted).

There was more than a sufficient basis here for the District Court to conclude that Dinh's methodology was "the product of reliable principles and methods" and that she correctly applied those principles as required by Rule 702. Fed. R. Evid. 702(c). Dinh testified that statistical likelihood analysis "is a validated method," that "current laboratories still use it," and that likelihood ratios were a standard "used, generally, in the scientific community." While it is true that Dinh did not testify regarding whether likelihood ratios had been subjected to peer review or their potential error rate, she need not have addressed every factor for her testimony to be admissible. *Pineda*, 520 F.3d at 248. And when we consider such relevant factors as whether statistical likelihood

13

analysis is generally accepted and if there are standards controlling its operation, we cannot say that the District Court abused its discretion in admitting her testimony here about that analysis. *See id.* at 247–48.

## II. CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment.