**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2589
_____

UNITED STATES OF AMERICA,

Appellant

v.

CARMINE A. MATTIA, JR.


_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:21-cr-00576-001)
District Judge: Honorable Brian R. Martinotti
_____

Argued: July 8, 2025

Before:  RESTREPO, BIBAS and CHUNG, *Circuit Judges*.

(Filed: October 21, 2025)


Mark E. Coyne
Vikas Khanna
Office of United States Attorney
970 Broad Street

Room 700
Newark, NJ 07102

Norman Gross
R. David Walk, Jr. [ARGUED]
Office of United States Attorney
Camden Federal Building & Courthouse
401 Market Street
Camden, NJ 08101

    *Counsel for Appellant*

Bruce A. Levy [ARGUED]
Hartmann Doherty Rosa Berman & Bulbulia
830 Morris Turnpike
Suite 304
Short Hills, NJ 07078

    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RESTREPO, *Circuit Judge*

Appellee Carmine Mattia was charged in a superseding indictment (the "Superseding Indictment") with having defrauded a pharmacy benefits management company by causing the submission of fraudulent claims for medically unnecessary compounded medicines. According to the Superseding Indictment, Mattia induced an individual ("Individual-1") to seek out unnecessary compounded

2

medicines and secured, or caused to be secured, a doctor's signature on prescriptions for these medicines without a medical examination or a determination of medical necessity. The District Court dismissed the Superseding Indictment, finding that it failed to adequately allege any misrepresentations or omissions sanctionable by 18 U.S.C. § 1347.

The Government now appeals, contending that the submitted claims contained an implicit misrepresentation by incorporating fraudulent prescriptions. We agree. Because the Superseding Indictment adequately alleged a misrepresentation, and because Mattia's other arguments concerning the sufficiency of the Superseding Indictment fail, we will reverse the District Court's order granting Mattia's motion to dismiss and remand for further consideration consistent with this opinion.

## I.    BACKGROUND [1]

Appellee Carmine Mattia was an employee of a telecommunications company (the "Company") and a union representative for his fellow employees there. The Company contracted with a pharmacy benefits management company ("PBM-1") that "adjudicated claims for reimbursement from pharmacies and paid pharmacies for valid claims submitted on behalf of beneficiaries." A40. While employed by the Company, Mattia was also a sales representative for compounded medications "for a marketing company located in or around New York and compounding pharmacies." A42. As

---

[1] The following facts are taken from the Superseding Indictment and assumed to be true for purposes of assessing the sufficiency of the Superseding Indictment.

3

a sales representative, Mattia was paid a percentage of sales whenever a compounded medication was billed to a paying health plan. Compounded medications are "[g]enerally . . . prescribed by a physician when an FDA-approved drug did not meet the health needs of a particular patient." A40–41.

In the Superseding Indictment filed against Mattia, the Government alleges that Mattia "caused Individual-1," A42, "a resident of New Jersey who had drug prescription benefits through the Company," A39, "to receive medically unnecessary compounded medications," A42. The goal of this scheme was "to fraudulently obtain money by causing the submission of Individual-1's false and fraudulent insurance claims for compounded prescription medications to the Company's health care plan." A41.

To secure the medically unnecessary compounded medications, Mattia allegedly "secured and caused to be secured the signature of Robert Agresti," a doctor, "on prescription forms for Individual-1, (a) without Robert Agresti and Individual-1 having a doctor/patient relationship, (b) without Robert Agresti determining that Individual-1 had a medical necessity for the compounded medications selected, and (c) without Robert Agresti conducting an examination of Individual-1." A43. In exchange for seeking these medications, Mattia allegedly "gave Individual-1 cash and check payments." *Id.* After learning he was the subject of a criminal investigation, Mattia allegedly told Individual-1 to lie to investigators and tell them these payments were "for work that Individual-1 performed on [Mattia's] kitchen." A44.

On the basis of these allegations, Mattia was charged with one count of conspiracy to commit health care fraud (Count One) and three counts of substantive health care fraud

(Counts Two, Three, and Four).  Mattia was also charged with witness tampering and obstruction, but those counts are not at issue in this appeal.

Before the District Court, Mattia moved to dismiss Counts One through Four of the Superseding Indictment. Mattia primarily contended that these counts failed to identify any misstatement or omission and were unconstitutionally vague as applied because they used the term "medically unnecessary."  The District Court agreed with Mattia, finding that the Superseding Indictment did not allege:

> (1) any misrepresentation or false or fraudulent statement or omission by Defendant;
>
> (2) how the 'false and fraudulent insurance claims' were 'caused' to be submitted to the Health Plan and who submitted those claims; or
>
> (3) what, if any, false or fraudulent statements or misrepresentations appeared (or fraudulent omissions did not appear) on the 'false and fraudulent insurance claims' that were purportedly submitted to the Health Plan, nor who made those statements, misrepresentations, or omissions.

A14.  Specifically, the District Court found that:

> [T]o the extent the Government contends health care fraud was sufficiently alleged because there was a false statement in the prescriptions themselves and/or the claims submitted to the Health Plan (or even a false implicit statement)

stating that the prescriptions were 'medically necessary' for Individual-1, that fact is not alleged in the Superseding Indictment.

A17. The District Court found that Mattia was "[n]otably missing" from the chain of events whereby "the doctor writes the script for the prescription and then the doctor or the pharmacy . . . submits a claim to the PBM, which subsequently submits a claim . . . to the insurance company for adjudication." A18. Accordingly, the District Court granted Mattia's motion to dismiss the Superseding Indictment. The Government now appeals.

## II. DISCUSSION [2]

### A. Standard of Review

"The 'sufficiency of an indictment to charge an offense is a legal question subject to plenary review.'" *United States v. Yusuf*, 536 F.3d 178, 184 (3d Cir. 2008) (quoting *United States v. Conley*, 37 F.3d 970, 975 n.9 (3d Cir. 1994)). A court's determination of the sufficiency of an indictment "must be based on whether the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict." *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011).

Federal indictments are governed by Federal Rule of Criminal Procedure 7(c), which requires only a "plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). "An

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3731.

6

indictment is generally deemed sufficient if it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989) (quoting *Russell v. United States*, 369 U.S. 749, 763–64 (1962)) (cleaned up).

Section 1347, the underlying health care fraud statute, prohibits "knowingly and willfully execut[ing], or attempt[ing] to execute, a scheme or artifice—(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services[.]" 18 U.S.C. § 1347(a).

## B. Sufficiency of the Superseding Indictment

Mattia contends that the Superseding Indictment failed to state an offense and failed to apprise him of what he must be prepared to meet at trial for three main reasons: (1) it fell short of adequately alleging a misrepresentation; (2) it used vague and undefined terminology; and (3) it lacked requisite specificity regarding Mattia's knowledge of and interactions with Dr. Agresti. None of these arguments are availing.

### *i. Misrepresentations*

The Government contends that the Superseding Indictment fairly "identifies the misrepresentations at the heart of the fraudulent scheme: that the prescriptions for Individual-

1 were medically necessary based on a legitimate examination conducted by a doctor." Appellant's Br. at 14. Specifically, the Government argues that the prescriptions obtained for Individual-1 "conveyed false representations that the medications were legitimately needed based on a bona fide examination by a doctor." *Id.* "Because PBM-1 only paid for 'valid claims,' the allegations taken together permit an inference that, at the very least, the conspirators made implicit representations to PBM-1 that the medications for Individual-1 were medically necessary based on a legitimate doctor's evaluation and examination." *Id.* at 16.

In response, Mattia argues that the Superseding Indictment fails to allege any "false or fraudulent pretenses, representations, or promises" as required to sustain a health care fraud charge. Appellee's Br. at 11 (quoting 18 U.S.C. § 1347(a)). To Mattia, the Government's argument improperly relies on the undefined term "valid claims," reaching outside the four corners of the indictment to assert that a "valid claim" is only one based on a "legitimate doctor's evaluation and examination" that a medication is medically necessary. *Id.* at 17.

Mattia is incorrect: we do not need to reach outside the four corners of the Superseding Indictment to find that the government alleged an implicit fraudulent misrepresentation. As an initial matter, we join the Fifth and Eleventh Circuits in recognizing that implicit misrepresentations can give rise to valid charges under Section 1347. *See United States v. Anderson*, 980 F.3d 423, 429 (5th Cir. 2020) ("We conclude that an implicit misrepresentation theory of health care fraud is valid."); *United States v. Gonzalez*, 834 F.3d 1206, 1214 (11th Cir. 2016) ("A person makes a false claim if the treatments that were billed were 'not medically necessary[ ] or were not

8

delivered to the patients.'" (quoting *United States v. Medina*, 485 F.3d 1291, 1304 (11th Cir. 2007))). We have long recognized that implicit misrepresentations are cognizable in other fraud contexts, and we see no justification in the text of Section 1347(a) to stray from this approach. *See, e.g.*, *United States v. Ferriero*, 866 F.3d 107, 120 (3d Cir. 2017) ("Express falsehoods lie at fraud's core, but a fraudulent representation need not be fraudulent on its face, nor must it necessarily involve affirmative misrepresentation." (cleaned up)).

Here, the District Court concluded that there was no implicit misrepresentation alleged in the Superseding Indictment because there was no alleged "false implicit statement" contained "in the prescriptions themselves and/or the claims submitted to the Health Plan . . . that the prescriptions were 'medically necessary' for Individual-1." A17. This was error.

In reviewing its sufficiency, "we review the indictment using a common sense construction." *United States v. Hodge*, 211 F.3d 74, 76 (3d Cir. 2000). A common-sense reading of the Superseding Indictment makes it clear that the claims submitted to PBM-1 incorporated Dr. Agresti's prescriptions and that those prescriptions contained implicit misrepresentations.

The Superseding Indictment adequately alleges that a prescription is a required component of a claim submitted to PBM-1. The Superseding Indictment describes the compounded medications as "compounded prescription medications," suggesting that a prescription is required for them to be dispensed. A41. And the Superseding Indictment states that Mattia was paid "a percentage of the adjudication or reimbursement amount for each prescription for compounded

9

medication that [Mattia] caused to be billed to a paying health plan." A42. This phrasing—that "prescriptions" were "billed to a paying health plan"—suggests that the prescriptions played an integral part of the claims submitted to PBM-1. *Id.*

A common-sense reading of the Superseding Indictment also makes it clear that the government alleged that these prescriptions, signed by Dr. Agresti, carried implicit misrepresentations. Viewed through this common-sense lens, the Superseding Indictment sufficiently alleges that a valid prescription for compounded medications must be based on a physician's medical assessment of the "health needs of a particular patient." A40–41 (alleging that "[g]enerally, compounded drugs were prescribed by a physician when an FDA-approved drug did not meet the health needs of a particular patient," and that "[c]ompounded drugs could also be prescribed when a patient could not consume a medication by traditional means"). Even the word "prescription" itself, if ascribed a common-sense definition, suggests a level of validity based on a doctor's determination that a particular drug is needed by a patient. *See United States v. Smith*, 573 F.3d 639, 651 (8th Cir. 2009) ("[T]he word prescription . . . in common parlance, means only a bona fide order—i.e., directions for the preparation and administration of a medicine, remedy, or drug for a real patient who actually needs it after some sort of examination or consultation by a licensed doctor[.]" (quoting *United States v. Nazir*, 211 F. Supp. 2d 1372, 1375 (S.D. Fla. 2002))). By alleging that Dr. Agresti's prescriptions were issued "(a) without Robert Agresti and Individual-1 having a doctor/patient relationship, (b) without Robert Agresti determining that Individual-1 had a medical necessity for the compounded medications selected, and (c) without Robert Agresti conducting an examination of

10

Individual-1," the Superseding Indictment sufficiently alleged that these prescriptions were not bona fide orders and therefore contained an implicit misrepresentation.[3] A43.

Because the Superseding Indictment sufficiently alleged that Dr. Agresti's prescriptions contained implicit misrepresentations, and that these implicit misrepresentations were incorporated into the claims submitted to PBM-1, the District Court erred in concluding that the Superseding Indictment did not sufficiently allege a misrepresentation. More specificity or detail concerning these misrepresentations was not required for the Superseding Indictment to clear Rule 7(c)(1)'s low bar.

### ii. Vagueness

Mattia also contends that the Superseding Indictment fails to apprise him of what he needs to meet at trial because it used the terms "medically unnecessary," "doctor/patient relationship," and "valid claims," which Mattia argues are undefined and vague. Appellee's Br. at 11–14. The District Court, in assessing the sufficiency of the indictment, was troubled by the Superseding Indictment's use of the term "medically unnecessary," finding that "there is unquestionably no singular or static definition for 'medically unnecessary,'

---

[3] That it was not Mattia himself directly making these misrepresentations is of no consequence: "[i]f conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators." *Salinas v. United States*, 522 U.S. 52, 64 (1997).

rendering it a vague term, which can have different meanings depending on context." A17.

We do not share these concerns. Because "criminal indictments are to be read as a whole and interpreted in a common sense manner," *United States v. Lee*, 359 F.3d 194, 209 (3d Cir. 2004) (cleaned up), the mere fact that a term "can have different meanings depending on context," A17, does not render it unusable in an indictment. Here, a fair, holistic, and common-sense interpretation of the terms in the context in which they are used in the Superseding Indictment fairly apprises Mattia of what he needs to meet at trial.[4]

### iii. Allegations Concerning Dr. Agresti

Mattia contends that the Superseding Indictment was insufficient because it "is silent regarding when and under what circumstances Dr. Agresti signed [Individual-1's] prescriptions." Appellee's Br. at 14–15. But this level of specificity is not required by Rule 7(c), which merely requires "a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) ("While detailed allegations might well have been required under common-law pleading rules, they surely are not contemplated by Rule 7(c)(1)." (citation omitted)). The

---

[4] The District Court suggested that the Superseding Indictment was unconstitutionally vague, but did not rule on this aspect of Mattia's motion. Though we hold that the Superseding Indictment fairly apprises Mattia of what he needs to meet at trial despite its use of the term "medically unnecessary," we leave the issue of unconstitutional vagueness to the District Court to address in the first instance.

Superseding Indictment described the essential facts of Mattia's alleged scheme, and therefore complies with Rule 7(c), even though it did not detail the specific timing and circumstances of Dr. Agresti's participation in it. *United States v. Stevenson*, 832 F.3d 412, 424 (3d Cir. 2016) (generally, indictments are sufficient when they track statutory language).

Mattia also argues that the Superseding Indictment failed to allege that Mattia "knew that there was no doctor patient relationship" between Individual-1 and Dr. Agresti, "knew that the medications were not needed," or "knew that there was no physical examination." Appellee's Br. at 22. Without those allegations, Mattia argues that the Superseding Indictment fails to allege that he "knew there was a conspiracy or scheme to defraud as alleged and knowingly joined a conspiracy or knowingly participated in the alleged scheme." *Id.* at 23.

This argument also fails. The Superseding Indictment plainly stated that Mattia "did knowingly and intentionally conspire and agree with others to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program," A41, and that he "did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program," A45. The Superseding Indictment went into further detail concerning Mattia's knowledge of the scheme's fraudulent nature, alleging among other things that he "gave Individual-1 cash and check payments to induce Individual-1 to obtain medically unnecessary compounded medications," A43, payments which Mattia "well knew . . . were illicit payments to induce Individual-1 to obtain medically unnecessary prescriptions," A44. These allegations are sufficient to allege that Mattia

13

knowingly participated in a conspiracy and scheme to defraud PBM-1. *Stevenson*, 832 F.3d at 424.

**III.  CONCLUSION**

For the reasons set forth above, we will reverse the District Court's order granting Mattia's motion to dismiss and remand for further consideration consistent with this opinion.